GEORGE W. CARLISLE, JR.,            )
                                    )
            Plaintiff,              )
                                    )
        vs.                         )        No. 4:09CV421-DJS
                                    )
ST. CHARLES COMMUNITY COLLEGE,      )
                                    )
            Defendant.              )


<u>ORDER</u>

Pro se plaintiff George W. Carlisle, Jr., a 63 year-old black male, alleges that defendant St. Charles Community College failed to hire him for twelve different positions because of his age, race, and sex, which, in his words, creates "a complaint matrix of 36 segments." Doc. #25, p. 1. He seeks relief for employment discrimination under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. Plaintiff also purports to bring claims for prima facie tort, negligent hiring, and negligent infliction of emotional distress, having listed those torts in the title of his complaint. Now before the Court are defendant's motion for summary judgment [Doc. #13] and plaintiff's motion to dismiss defendant's motion for summary judgment [Doc. #17]. These matters have been fully briefed and are ripe for disposition.

1

## Plaintiff's Motion to Dismiss Defendant's Motion for Summary Judgment

Plaintiff moves to dismiss defendant's motion for summary judgment for failure to state a claim upon which relief can be granted. Such a motion is not recognized by the Federal Rules of Civil Procedure. Thus, the motion will be denied, and the Court will consider defendant's motion.

## Defendant's Motion for Summary Judgment

As an initial matter, the Court notes that plaintiff is a pro se litigant, and as such his pleadings are held "'to less stringent standards than formal pleadings drafted by lawyers.'" Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Nevertheless, plaintiff must comply with substantive and procedural law. See Am. Inmate Paralegal Ass'n v. Cline, 859 F.2d 59, 61 (8th Cir. 1988).

In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Once the moving party has met this burden,

the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, the Court will not weigh the evidence and decide the truth of the matter, but rather, will determine if there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249.

In ruling on a motion for summary judgment, "'a District Court must resolve any factual issues of controversy in favor of the non-moving party' only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990). Consequently, in order to withstand a motion for summary judgment, evidence submitted by a non-movant must contain specific facts, and general statements will not be supplemented by a court's assumptions.

> It will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is).

Id. at 889. In light of the almost total failure to support his opposition to the motion with evidence (as described below), the Court notes that it is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)). Finally, "[a]lthough summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (citations omitted).

## I. Facts

The following facts are undisputed for purposes of this motion.[1] St. Charles Community College is a junior college district organized and operating pursuant to the laws of the State

---

[1] The facts in this section are drawn from defendant's statement of uncontroverted material facts. Doc. #15. Under local rules, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 7-4.01. Plaintiff's response failed to specifically controvert the vast majority of facts asserted by defendant, and thus, most of defendant's statement of the facts will be deemed admitted. The Court will indicate in the footnotes that follow which facts were deemed admitted and which were actually admitted. When referring to several facts in a single footnote, that footnote applies to all facts following the previous footnote.

of Missouri.  The application and hiring process for positions at the college are coordinated through its Human Resources Office. The employment of full-time staff members is approved at the monthly meetings of the college's Board of Trustees.[2]

Plaintiff frequently applied for positions with defendant, as it was convenient to where he lived.  When plaintiff applied for positions with defendant, he sent his resumes to defendant via facsimile or submitted them in person to the Human Resources Office.  He submitted similar resumes and cover letters for each position for which he applied.  He did not speak with anyone at the college regarding the positions for which he applied.[3]

**Help Desk Analyst, 06-103**

In December 2006, defendant posted a job opening for the position of Help Desk Analyst, requisition number 06-103.  Ms. Gayle Palmer, the Help Desk Manager, was the hiring manager for this position.  Mr. Greg Wirth, Director of Network Computing, and Mr. David Willmore, Learning Systems Administrator, assisted Palmer with the selection process.  Palmer, Wirth, and Willmore were responsible for reviewing the applications and resumes, selecting the candidates to be interviewed, and recommending who should be

---

[2]Plaintiff denies these facts, stating that he "has no knowledge of these alleged facts and must therefore deny them."  Doc. #27, p. 1. Plaintiff does not support his denial with citation to any supporting evidence.  The Court finds that these facts are deemed admitted.

[3]Plaintiff admits these facts.

hired.

Mr. Andrew Nicholson was hired for the Help Desk Analyst position. Plaintiff submitted his resume for this position two days after the position was offered to Nicholson, so plaintiff was not considered for the position.[4] Plaintiff did not speak with Palmer, Wirth, or Willmore at any time,[5] and they had no information regarding his age or race.[6]

**Help Desk Analyst, 06-104**

Defendant posted a second Help Desk Analyst position, requisition number 06-104, in December 2006. The same persons and selection process as the prior analyst position were used. The posted qualifications for the position included: a high school diploma or equivalent, or one to three months experience or training, or equivalent combination of education and experience; excellent customer service skills; a good phone presence; good computer skills; experience in troubleshooting login problems, Internet use, and e-communications; excellent problem solving skills; and a high degree of familiarity with setting up both hardware and software applications. Palmer, Wirth, and Willmore

---

[4]Plaintiff denies these facts, stating that he "has no knowledge of these alleged facts and must therefore deny them." Doc. #27, p. 2. Plaintiff does not support his denial with citation to any evidence that supports his denial. Under the previously cited local rule, the Court finds that these facts are deemed admitted.

[5]Plaintiff admits this fact.

[6]Plaintiff denies this fact without any supporting evidence, so it is deemed admitted.

also considered the applicants' experience in providing technology support in an academic environment.

Plaintiff's resume did not identify any experience providing technology support in an academic environment. Based upon the review of the applicants' resumes, plaintiff was not selected for an interview. Palmer, Wirth, and Willmore did not speak to plaintiff at any time.

Mr. Ryan Mathias, who was already employed by defendant at the time he applied, was selected for the position. Mathias had obtained his Associate's Degree in applied-science networking from defendant and had worked in a computer laboratory there. He was very familiar with defendant's network. Based on that background, Palmer, Wirth, and Willmore decided that Mathias was the most qualified candidate for the position.[7]

**Project Coordinator, 06-105**

In late December 2006, defendant posted a job opening for the position of Project Coordinator, requisition number 06-105. Ms. Diane Schroeder, Associate Dean for Corporate and Community Development, was the hiring manager for the position, and Mr. Tom Haggerty, Adult Education and Literacy Coordinator, assisted in the selection process. Schroeder and Haggerty reviewed the applications and resumes for the position, selected the candidates to be interviewed, conducted the interviews, and recommended who

---

[7]Plaintiff denies these facts but does not cite any evidence to support his denials. The facts are deemed admitted.

should be hired.[8]  The required qualifications for the position included an Associate's degree or equivalent from a two-year college or technical school, or six months or more related experience and/or training, or an equivalent combination of education and experience.[9]  Schroeder and Haggerty also considered the applicants' experience with duties such as: coordinating payroll, billing, purchase orders and check requests; assisting with budgeting and finances; analyzing information for marketing and program research; and coordinating programs, events, courses and seminars with instructors and trainers.[10]

Plaintiff submitted a resume for the Project Coordinator position.[11]  Plaintiff's resume did not identify any experience with project coordination or educational programming.[12]  Based on a review of the applicants' resumes, plaintiff was not selected for an interview.  Plaintiff did not speak with Schroeder or Haggerty at any time, and they had no information regarding his age or race.

---

[8]Plaintiff denies these facts, without citing any evidence to support the denials.  Again, the facts are deemed admitted.

[9]Plaintiff admits this fact.

[10]Plaintiff denies this fact without any support.  It is deemed admitted.

[11]Plaintiff admits this fact.

[12]Plaintiff denies this fact and cites to several paragraphs in his "Statement of Facts Affidavit." Nothing in those paragraphs indicates that his resume identified experience in project coordination or educational programming.  Thus, the Court finds that plaintiff's denial is not supported by evidence in the record, and the fact is deemed admitted.

Ms. Jeanette Boria, a 52 year-old Hispanic woman, was selected for the position because Schroeder and Haggerty determined she was the most qualified candidate. At that time, Boria was already employed by defendant as an administrative secretary, and therefore, had experience with program coordination and support in an education environment.

**Project-Based Office Assistant, F-C & CD**

On or about December 10, 2006, defendant posted an opening for a Project-Based Office Assistant position, requisition code F-C & CD. Ms. Lita Pener, Director of Workforce Development, was the hiring manager for the position. Mr. Bob Boatwright, a United Auto Workers official at the General Motors plant, and Mr. Joe Hogan, the human resources director at the General Motors plant, assisted in the selection process. Pener, Boatwright, and Hogan reviewed the applications, selected candidates to be interviewed, conducted interviews, and recommended who should be hired.[13] The required qualifications for the position included: familiarity with the Microsoft Office Suite; ability to use Microsoft Access; one-year certificate from a college or technical school, or three months related experience and/or training, or equivalent combination of education and experience.[14] Additionally, Pener, Boatwright, and Hogan considered the applicants' clerical

---

[13]Plaintiff denies these facts without supporting evidence, so they are deemed admitted.

[14]Plaintiff admits this fact.

experience, including maintaining and tracking records, because those skills were the primary responsibilities of the position.[15]

Plaintiff submitted his resume for the position.[16] It did not identify any clerical experience.[17] Based on a review of the applicants' resumes, plaintiff was not selected for an interview. Plaintiff did not speak with Pener, Boatwright, or Hogan at any time, and they had no information regarding his age or race.

Ms. Julie Berkbigler was selected for the position. She met the minimum qualifications for the position, had related clerical experience, and was familiar with the General Motors plant where the position would be located. Based on those factors, Pener, Boatwright, and Hogan determined that she was the most qualified candidate for the position.

**Administrative Secretary, 06-096**

In early November 2006, defendant posted a job opening for the position of Administrative Secretary, requisition number 06-096. Pener was the hiring manager for the position. Ms. Rose

---

[15]Plaintiff denies this fact without evidentiary support, so it is deemed admitted.

[16]Plaintiff admits this fact.

[17]Plaintiff denies this fact and states that he has clerical experience. He refers the Court to a document outlining his military service record, which includes the position "Personnel Clerk." There is no indication that plaintiff submitted this information for the Project-Based Office Assistant position. The Court has reviewed the resume plaintiff submitted for the position and finds that plaintiff has not cited any evidence to support his denial of this fact. Therefore, it is deemed admitted.

Brooks, Business & Industry Projects Manager, and Ms. Tammie De Los Santos, previously School/Business Programs Coordinator and currently Manager of Workforce Development, assisted Pener. They were responsible for reviewing applications, interviewing candidates, and selecting who should be hired.

Ms. Wendy Brown was selected for the position. Plaintiff submitted his resume after Pener, Brooks, and De Los Santos had screened the resumes of the candidates, so he was not considered for the position. Plaintiff never spoke to Pener, Brooks, or De Los Santos, and they had no information regarding his age or race.

**Business & Industry Projects Manager, 07-022**

At the end of April 2007, defendant posted a job opening for the position of Business & Industry Projects Manager, requisition number 07-022. Ms. Yvonne Wills, Dean of Corporate and Community Development, was the hiring manager for the position. Ms. Jeanine Williams, Human Resources Generalist, Ms. Amanda Sizemore, Director of Workforce Development, Mr. Rich Helldoerfer, Technical Writer, and De Los Santos also served on the search committee. The search committee was responsible for reviewing the applications, selecting candidates for interviews, and recommending who should be hired.[18] The required qualifications included: an advanced degree in business, education, or related areas and at least five years of work experience in business, educational

_____

[18]Plaintiff denies these facts without evidentiary support. They are deemed admitted.

administration, or public administration and background in sales and marketing or public relations; record of success in developing revenue programs; leadership skills in workforce development; and a valid driver's license.[19] The primary duty of the position was to oversee defendant's offsite projects, including the General Motors skills center and the General Motors customized project.[20]

Plaintiff submitted a resume for the position.[21] His resume did not identify any record of success in developing revenue programs.[22] Based upon a review of the applicants' resumes, plaintiff was not selected for an interview. Plaintiff did not speak with Wills, Williams, Sizemore, Helldoerfer, or De Los Santos at any time, and they had no information regarding plaintiff's age or race.

Mr. Joe Hogan, aged 67 years, was selected for the position. Hogan had 41 years of directly related experience, as he was previously the Training Director at General Motors. The search committee determined that Hogan was the most qualified candidate.

---

[19]Plaintiff admits this fact.

[20]Plaintiff denies this fact without support. It is deemed admitted.

[21]Plaintiff admits this fact.

[22]Plaintiff denies this fact and states that he had public relations experience with multiple organizations. The Court finds that his denial and the statements made in his affidavit do not refute the fact asserted by defendant. While plaintiff may very well have had such experience with multiple prior organizations, plaintiff has not refuted the fact that such experience was not identified on his resume. Because plaintiff fails to specifically controvert the fact, it is deemed admitted.

**Training Specialist, 07-023**

In late April 2007, defendant posted a job opening for the position of Training Specialist, requisition number 07-023. Wills was the hiring manager for the position. Williams, Sizemore, De Los Santos, and Ms. Lisa Scott also served on the search committee, which was responsible for the hiring process.[23] The required qualifications for the position included: a Bachelor's degree from a four-year college or university, or two years related experience and/or training, or equivalent combination of education and experience; experience in adult education, preferably in a workplace setting; knowledge of teaching techniques, marketing, and implementation of strategies; computer software experience; and a valid driver's license and reliable transportation.[24]

Plaintiff submitted a resume, but his resume listed only limited training-related experience in some computer software classes. Based upon the review of the applicants' resumes, plaintiff was not selected for an interview. Plaintiff did not speak with any of the members of the hiring committee at any time, and they had no information regarding his age or race.

Ms. Fay Aubuchon, aged 57 years, was selected for the position. She had directly related experience as a Training Coordinator and Trainer/Developer. Her experience included grant

---

[23]Plaintiff denies these facts without support. They are deemed admitted.

[24]Plaintiff admits this fact.

writing, train gap analyses, and development and delivery of a variety of courses to manufacturers. The search committee determined that she was the most qualified candidate for the position.

**Purchasing Assistant, 07-032**

In early June 2007, defendant posted an opening for the position of Purchasing Assistant, requisition number 07-032. Ms. Chris Romer, Director of Purchasing, was the hiring manager for the position and was assisted by Ms. Diana Schoo, a Buyer. They were responsible for the hiring process.

Ms. Kim Greenwood was selected for the position. Plaintiff submitted his resume after Romer and Schoo had screened the resumes of the candidates for the position, so he was not considered. Plaintiff never spoke with Romer or Schoo, and they had no information regarding his age or race.

**Office Assistant, 07-044**

In early July 2007, defendant posted a job opening for the position of Office Assistant, requisition number 07-044. Ms. Paula Peraino, Office Coordinator, was the hiring manager for the position and was assisted by Ms. Yvette Sweeney, Director of Student Development. Peraino and Sweeney were responsible for the entire hiring process.[25] The required qualifications included: a one-year certificate from a college or technical school, or at

---

[25]Plaintiff denies these facts without supporting evidence, so they are deemed admitted.

least three months related experience and/or training, or equivalent combination of education and experience; and basic word processing experience.[26] Peraino and Sweeney considered the applicants' clerical and office experience.[27]

Plaintiff submitted a resume for the position.[28] It did not identify any clerical experience.[29] Based upon the review of the applicants' resumes, Plaintiff was not selected for an interview. Plaintiff did not speak with Peraino or Sweeney, and they had no information regarding his age or race.

Ms. Mary Becker, aged 55 years, was selected for the position. She was already employed by defendant at the time and had experience with clerical work within defendant's setting. Peraino and Sweeney determined that Becker was the most qualified candidate for the position.

**Help Desk Analyst, 07-045**

In early July 2007, defendant posted an opening for the position of Help Desk Analyst, requisition number 07-045. Palmer

[26]Plaintiff admits this fact.

[27]Plaintiff denies this fact without supporting evidence, so it is deemed admitted.

[28]Plaintiff admits this fact.

[29]Plaintiff denies this fact and states that he has clerical experience. He refers the Court to a document outlining his military service record, which includes the position "Personnel Clerk." There is no indication that plaintiff submitted this information for the Office Assistant position. The Court has reviewed the resume plaintiff submitted for the position and finds that plaintiff has not cited any evidence to support his denial of this fact. Therefore, it is deemed admitted.

was the hiring manager and was assisted by Willmore, Nicholson, and Ms. Erin Lanham, Reference Librarian. They were responsible for conducting the hiring process.

Ms. Lindsey Lewis was selected for the position. Plaintiff submitted his resume after the position was offered to Lewis, so he was not considered for the position. Plaintiff did not speak with Palmer, Willmore, Nicholson, or Lanham, and they did not have any information regarding his age or race.

**Administrative Secretary, 07-047**

In mid-July 2007, defendant posted a job opening for the position of Administrative Secretary, requisition number 07-047. Schroeder was the hiring manager, and Boria assisted. They were responsible for the hiring process.[30] The qualifications included: an Associate's degree or equivalent from a two-year college or technical school and one year of office experience, or high school diploma or equivalent and three years related experience, or equivalent combination of education and experience; Microsoft Office experience preferred; detail oriented, with excellent organization, time management, and interpersonal skills; bilingual (Spanish/English) preferred; comfortable working with students from other cultures who have low English proficiency; and knowledge of the Adult Education & Literacy ("AEL") program preferred.

---

[30]Plaintiff denies these facts without supporting evidence, so they are deemed admitted.

16

Plaintiff submitted a resume for the position.[31]   The resume did not identify any secretarial experience, knowledge of the AEL program, or knowledge of another language.   Based upon review of the applicants' resumes, plaintiff was not selected for an interview.   Plaintiff did not speak with Schroeder or Boria at any time, and they had no information regarding his age or race.

Ms. Samantha Humes was selected for the position.   She was already employed by defendant at that time and was familiar with the database used by the Administrative Secretary.   She speaks Spanish fluently.   Schroeder and Boria determined that Humes was the most qualified candidate.

**Network Specialist, 07-050**

In late July 2007, defendant posted a job opening for the position of Network Specialist, requisition number 07-050.   Wirth was the hiring manager and was assisted by Ms. Barbara Keim, Vice President for Technology, Research, and Planning, Ms. Diane Eyssell, System Administrator, Ms. Lisa Mouser, Manager of Academic Counseling, and Williams.   These employees of defendant were responsible for conducting the hiring process.[32]   The required qualifications included: a Bachelor's degree in a related discipline plus four years full-time relevant experience with Microsoft Server OS, microcomputer systems operations management,

---

[31]Plaintiff admits these facts.

[32]Plaintiff denies these facts without supporting evidence, so they are deemed admitted.

preventive maintenance and repair, or equivalent combination of education and experience.[33] The search committee also considered the applicants' experience with duties such as development of server and network architecture, configuration of network switches, and creation of shared drives and server installation, as well as experience with remote installation services, Systems Management Server, and Student Access Servers.[34]

Plaintiff submitted a resume for the position.[35] The search committee noted that his resume and cover letter highlighted wholly irrelevant facts such as his citizenship, birthplace, the passing of a notary public examination, and proficiency with a ten-key calculator, none of which were applicable to the position. Plaintiff's cover letter and resume did not indicate specific knowledge of high-level computer server maintenance programs or experience with the configuration of network switches, remote installation services, or systems management servers. Based upon the review of the applicants' resumes, plaintiff was not selected for an interview. Plaintiff never spoke with anyone on the committee, and they had no information regarding his age or race.

The candidate who was initially offered the position declined, and the position was readvertised in November 2007. At

---

[33]Plaintiff admits this fact.

[34]Plaintiff denies this fact without supporting evidence, so it is deemed admitted.

[35]Plaintiff admits this fact.

that time, Mr. Matthew Kroll, Employment/Benefits Coordinator, served on the search committee instead of Williams. Mr. Jeramy Thompson was selected for the position. His work history demonstrated experience with high-level computer server maintenance programs, configuration of network switches, and remote installation services. The committee determined that Thompson was the most qualified candidate.[36]

## II. Discussion

### A. Discrimination Claims

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employers are also forbidden from taking adverse employment actions against employees because of their age. 29 U.S.C. § 623(a)(1). Plaintiff claims that defendant's decisions not to hire him for the twelve positions described above were based on his race, sex, and age. His claims are not based on any direct evidence of discrimination, but instead rest only on the fact that persons different from himself were hired for the respective positions. Under these circumstances, his failure to hire claims must be analyzed using the burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S.

---

[36]Plaintiff denies these facts without supporting evidence, so they are deemed admitted.

792 (1973), and later refined in <u>Texas Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981), and <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993). <u>Carlisle v. St. Charles Sch. Dist.</u>, 507 F. Supp. 2d 1018, 1023, 1028 (E.D. Mo. 2007).

Under the <u>McDonnell Douglas</u> framework, plaintiff must first establish a prima facie case of discrimination by adducing proof that: (1) he is a member of a protected class; (2) he was qualified for the position for which the employer was accepting applications; (3) he was denied the position; and (4) the employer hired someone from outside the protected class. <u>Arraleh v. County of Ramsey</u>, 461 F.3d 967, 975 (8th Cir. 2006). The prima facie case creates a rebuttable presumption of discrimination. <u>Burdine</u>, 450 U.S. at 254.

Once plaintiff creates this rebuttable presumption, defendant must advance a legitimate, non-discriminatory reason for the failure to hire. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 506-08. Defendant's burden is one of production, not proof. <u>Burdine</u>, 450 U.S. at 254-55. Defendant need not persuade the Court; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 509.

If defendant carries this burden, then the burden shifts back to plaintiff to show that defendant's proffered reason is merely a pretext for discrimination. <u>Burdine</u>, 450 U.S. at 253. Plaintiff may either prove pretext directly, by showing that defendant was more likely motivated by a discriminatory reason, or

20

indirectly, by showing that defendant's explanation is unworthy of credence. Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1108 (8th Cir. 1998). Plaintiff at all times bears the ultimate burden of establishing the existence of facts which, if proven at trial, would permit a jury to conclude that intentional discrimination was the true reason for the defendant's action. St. Mary's Honor Ctr., 509 U.S. at 508.

The Court will first examine whether plaintiff has established a prima facie case with respect to each of the positions described in his complaint. Plaintiff is a 63 year-old, black male, and thus is a member of the protected classes that form the bases of his claims. Plaintiff was denied each of the positions he sought with defendant. The Court will assume that plaintiff was qualified for each of the positions. Finally, with respect to the final element of the prima facie case (persons outside of the protected class being hired for the positions), plaintiff fails to establish a prima facie sex discrimination case with respect to the four positions for which men were hired (Help Desk Analyst, Help Desk Analyst, Business & Industry Projects Manager, and Network Specialist). He fails to establish a prima facie age discrimination case with respect to the four positions for which persons very near in age to plaintiff were hired (Business & Industry Projects Manager, Training Specialist, Purchasing Assistant, and Office Assistant). Finally, he fails to establish a prima facie race discrimination case with respect to

the Program Coordinator position for which a person of a minority race was hired. Plaintiff admits his failure to make a prima facie case on these claims in his "SCC Hiring Summary" chart, which comprised the fourth page of his memorandum in opposition.

Having summarily eliminated the above claims, the Court will assume that plaintiff has made a prima facie case for the remainder of his claims and turn to defendant's proffered reasons for not hiring plaintiff. With respect to the Help Desk Analyst, 06-103, and Help Desk Analyst, 07-045, positions, defendant offers uncontested evidence that plaintiff was not hired because he applied for the positions after they had already been offered to other candidates who ultimately accepted the offer. With respect to the Administrative Secretary, 06-096, and Purchasing Assistant, 07-032, positions, defendant offers uncontested evidence that plaintiff applied for the positions after the search committees had already screened the resumes from the applicant pool. Finally, for the remainder of the positions, defendant offers uncontested evidence that the candidates that were hired were more qualified than plaintiff. The Court finds that these are legitimate, non-discriminatory reasons for defendant not to have hired plaintiff.

Because defendant has met its burden to produce a legitimate, nondiscriminatory reason, the burden shifts back to plaintiff to "'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" <u>Reeves v.</u>

<u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000) (quoting <u>Burdine</u>, 450 U.S. at 253). Plaintiff can withstand summary judgment if the evidence in its entirety: (1) creates a fact issue as to whether defendant's proffered reasons are pretextual; and (2) creates a reasonable inference that race, sex, or age was a determinative factor in the adverse employment decision. <u>See</u> <u>Rothmeier v. Inv. Advisers, Inc.</u>, 85 F.3d 1328, 1336-37 (8th Cir. 1996). Viewing the facts and inferences from the facts in the light most favorable to plaintiff, the Court finds no evidence that creates a reasonable inference that race, age, or sex were determinative factors in defendant's decisions not to hire plaintiff, nor does the Court find any evidence that could support an inference of pretext.

As a general matter, plaintiff has offered nothing, other than self-serving allegations, to contest the validity or veracity of defendant's stated reasons for not hiring him. Plaintiff admits that when he filed his charges of discrimination and when he filed this lawsuit he had no evidence of discrimination, he did not know who had been hired for the positions, and he did not know anything about the qualifications of the persons hired. Despite this lack of information, plaintiff stated in his complaint that the discrimination was based on defendant's selection of a less qualified candidate. Plaintiff concedes that his claim of discrimination is based solely on his personal belief that he was the best person for the position.

"Although an employer's selection of a less qualified candidate 'can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual,' it is the employer's role to '[i]dentify [ ] those strengths that constitute the best qualified applicant." Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004) (quoting Duffy v. Wolle, 123 F.3d 1026, 1037-38 (8th Cir. 1997)). Thus, defendant is free to select its own criteria for evaluating and selecting candidates for employment. The Court cannot second guess the defendant's chosen selection criteria, and plaintiff cannot suggest what qualifications should be given the most weight. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).

Defendant asserts that it did not hire plaintiff for eight of the twelve positions because he was less qualified than the persons hired. Having reviewed the evidence and uncontroverted facts regarding the job posting requirements and the qualifications of the persons hired, all eight of defendant's hires were qualified for their positions. Even assuming that plaintiff was also qualified for each position, it is not enough for plaintiff to establish that he was qualified. Carlisle, 507 F. Supp. 2d at 1027. To support a finding of pretext, plaintiff must show that

defendant hired a <u>less</u> qualified applicant. <u>Id.</u> He has failed to do so.

With respect to the Help Desk Analyst, 06-104, position, defendant asserts that Ryan Mathias was the most qualified candidate. Mathias had obtained his Associate's degree in Applied Science-Networking from defendant and had worked in defendant's computer laboratory. He was already very familiar with defendant's network. Plaintiff had not had any experience with defendant's network and did not have a degree specific to computer networking. Moreover, defendant considered the applicants' experience in providing technology support in an academic environment, experience which Mathias had but plaintiff did not. Defendant has shown a reasonable basis for finding plaintiff less qualified than Mathias, which plaintiff has failed to refute.

With respect to the Project Coordinator, 06-105, position, defendant asserts that Jeannette Boria was the most qualified candidate. Boria was already employed by defendant as an Administrative Secretary and thus had experience with program coordination and support in an education environment. Plaintiff did not identify any experience with project coordination or educational programming. The job description also indicated a preference for multi-lingual candidates, and Boria is a fluent Spanish-speaker, while plaintiff did not identify any ability to speak a foreign language. Defendant has shown a reasonable basis for finding plaintiff less qualified than Boria, which plaintiff

has failed to refute.

With respect to the Project-Based Office Assistant, F-C&CD, position, defendant asserts that Julie Berkbigler was the most qualified candidate.  In her application materials, Berkbigler clearly demonstrated related clerical experience and indicated that she was familiar with the General Motors plant where the position would be located.  Plaintiff's applications materials did not highlight or even reference any clerical experience.  Instead, plaintiff's application appears focused on his computer networking and programming skills, skills not called for by this clerical position.  Defendant has shown a reasonable basis for finding plaintiff less qualified than Berkbigler, which plaintiff has failed to refute.

With respect to the Business & Industry Projects Manager, 07-022, position, defendant asserts that Joseph Hogan was the most qualified candidate.  The primary duty of this position was to oversee defendant's offsite projects, including the General Motors skills center and the General Motors customized project.  Hogan's resume showed that he had been in various human resource management positions with General Motors for over 30 years at the time he applied for defendant's position.  Plaintiff, on the other hand, submitted a resume mainly highlighting his computer skills. Furthermore, Hogan had completed a Master's degree in Business Administration, which plaintiff had not.  Plaintiff also submitted a cover letter discussing his background and various

qualifications. The cover letter indicates that plaintiff can type 40 words per minute, has passed the Missouri Notary Public examination, and is proficient in the use of a ten-key calculator, among other qualifications irrelevant to the position. Even if plaintiff had been equally qualified (which he has not shown), his cover letter would have reasonably raised serious questions about his judgment. Accordingly, defendant has shown a reasonable basis for finding plaintiff less qualified than Hogan, which plaintiff has failed to refute.

With respect to the Training Specialist, 07-023, position, defendant asserts that Fay Aubuchon was the most qualified candidate. Aubuchon had eight years of prior experience, between 1999 and the time of her hiring, as a Training Coordinator and Trainer/Developer and experience with grant writing, train gap analyses, and development and delivery of courses to manufacturers as reasons for its conclusion. In contrast, plaintiff's resume indicates only several years of teaching experience, most recently in 1998. Defendant has shown a reasonable basis for finding plaintiff less qualified than Aubuchon, which plaintiff has failed to refute.

With respect to the Office Assistant, 07-044, position, defendant asserts that Mary Becker was the most qualified candidate. At the time she applied, Becker was already employed by defendant as an office assistant in a different office, so she was familiar with the role. Prior to that, she had worked a similar

clerical position for about two years. Plaintiff's resume did not indicate any experience working as an office assistant with clerical work or reception duties. Defendant has shown a reasonable basis for finding plaintiff less qualified than Becker, which plaintiff has failed to refute.

With respect to the Administrative Secretary, 07-047, position, defendant asserts that Samantha Humes was the most qualified candidate. At the time she applied, Humes was already employed by defendant as an office assistant and had been in that role for over two years. Her resume and cover letter indicated that she was particularly well-suited for the position. In contrast, plaintiff's resume and cover letter focused not on any secretarial or clerical experience, but on his extensive experience with Quickbooks and computer networking and programming. These qualifications were completely irrelevant to the position. Humes also speaks Spanish fluently, which was a preferred qualification for the position. Plaintiff did not indicate that he could speak Spanish. Defendant has shown a reasonable basis for finding plaintiff less qualified than Humes, which plaintiff has failed to refute.

Finally, with respect to the Network Specialist, 07-050, position, defendant asserts that Jeramy Thompson was the most qualified candidate. Thompson had worked continually in computer networking from 2001 until he applied for the position, with several major corporations. His application indicated extensive

experience with high-level computer server maintenance programs, configuration of network switches, and remote installation services. Plaintiff's resume, while demonstrating experience with computer networking, showed that between 2003 and the time he applied, he had merely been working part-time as a support technician at Rainbow Connection, Inc. His resume also did not demonstrate specific knowledge of high-level server maintenance programs or experience with configuration of network switches, remote installation services, or systems management servers. Defendant has shown a reasonable basis for finding plaintiff less qualified than Thompson, which plaintiff has failed to refute.

To summarize the above discussion of the eight positions for which plaintiff was not hired due to the hiring of more qualified applicants, there is no evidence that creates a reasonable inference that defendant hired the eight persons-at-issue because of their races, ages, and sexes, rather than because they were more qualified than plaintiff.

For the remaining four positions, defendant asserts that plaintiff was not hired because he applied after the position had already been offered to others or after the resumes had been screened. This is a legitimate, non-discriminatory reason for failing to hire or interview plaintiff, so he must come forward with evidence to show that this reason was a mere pretext for discrimination. Plaintiff does not offer any such evidence.

To summarize the discussion of all twelve positions,

there is no evidence from which a person could infer that intentional discrimination was the true motive behind defendant's decisions. In fact, the uncontroverted evidence indicates that none of the decision-makers were aware of plaintiff's race or age when they were reviewing his applications. Plaintiff cannot withstand summary judgment by merely hoping, without presenting some evidence of pretext, that the jury might not believe defendant's unchallenged, legitimate, non-discriminatory reasons. <u>Barge v. Anheuser-Busch, Inc.</u>, 87 F.3d 256, 260 (8th Cir. 1996). Defendant is free to make any decision it chooses regarding its personnel, so long as it does not impermissibly discriminate. <u>See</u>, <u>e.g.</u>, <u>McLaughlin v. Esselte Pendaflex Corp.</u>, 50 F.3d 507, 511-12 (8th Cir. 1995). Plaintiff has not presented any evidence of discrimination in this case, so the Court will grant summary judgment with respect to all of plaintiff's discrimination claims.

**B. Tort Claims**

The title of plaintiff's complaint lists prima facie tort, negligent hiring, and negligent infliction of emotional distress. The text of his complaint, however, does not plead the elements of such claims. The complaint merely alleges employment discrimination. Thus, to the extent that any tort claims remain with the Court having granted summary judgment on plaintiff's discrimination claims, defendant seeks judgment on those claims. Defendant asserts that, as a governmental entity, it is entitled

to sovereign immunity on such claims.  Plaintiff does not oppose defendant's argument.  Under Missouri law, defendant is entitled to sovereign immunity from tort suits.  See <u>Aiello v. St. Louis Comm. College Dist.</u>, 830 S.W.2d 556, 558-59 (Mo. Ct. App. 1992). Accordingly, the Court will issue judgment in defendant's favor on plaintiff's tort claims.

**III. Conclusion**

Plaintiff has failed to produce any evidence to create a fact issue as to whether defendant's proffered reasons for not hiring him were pretextual.  Nothing in the record creates a reasonable inference that race, age, or sex was a determinative factor in the adverse employment decisions.  Additionally, plaintiff's tort claims fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #13] is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss [Doc. #17] is DENIED.


Dated this   12th    day of April, 2010.


                                    /s/Donald J. Stohr
                                    UNITED STATES DISTRICT JUDGE